**SWEDISH AMERICAN HOSPITAL,**
**Plaintiff,**

v.

**MIDWEST OPERATING ENGINEERS**
**FRINGE BENEFIT FUNDS,**
**Defendant.**

No. 93 C 2008.

United States District Court,
N.D. Illinois, E.D.

Nov. 16, 1993.

---

Raymond Edward Clutts, Neil Jordan Greene, Gregg A. Kinney, Grabowski & Clutts, Evanston, IL, for plaintiff.

Alan M. Auerbach, James M. Neuman, Catherine M. Chapman, Stephen J. Rosenblat, Baum & Sigman, Ltd., Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Swedish American Hospital brings this two count action against defendant Midwest Operating Engineers Fringe Benefit Funds, seeking reimbursement for the cost of hospitalization of three of the Fund's participants. Presently before this court is the Fund's motion for summary judgment. For the reasons set forth below, we grant the Fund's motion.

### I. Summary Judgment Standard

Under the Federal Rules of Civil Procedure, summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). This standard places the initial burden on the moving party to identify "those portions of 'the pleading, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Rule 56(c)). Once the moving party has done this, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(c). In deciding a motion for summary judgment, the court must read all facts in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 254, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Griffin v. Thomas,* 929 F.2d 1210, 1212 (7th Cir.1991).

### II. Background

Plaintiff Swedish American Hospital is an Illinois corporation located in Rockford, Illinois. The present lawsuit arises out of reimbursement benefits allegedly due Swedish American from the defendant, Midwest Operating Engineers Fringe Benefit Funds, on account of the hospitalization of three of Mid-

west's participants at various times in 1992.[1] Each of the participants executed assignments of benefits payable by Midwest to Swedish American, and of the $77,364.17 in claims which have been submitted by Swedish American, a total of $60,187.31 has been paid by Midwest. This dispute thus centers solely upon the remaining balance of $17,176.86.

With respect to each of the participants, Informed Patients, a consulting firm retained by Midwest to assess the reasonableness of hospital charges and recommend reimbursement amounts, wrote to Swedish American and explained the reason for the partial reimbursements. Informed Patients also requested information about the remaining charges that would allow it to determine whether those charges should be reimbursed. After receiving no response, Midwest's Claims Manager wrote Swedish American to reiterate the requests for information.[2]

Swedish American, through its attorneys, then wrote Midwest letters regarding each of the participants, in which it stated that it intended to "contest" Midwest's "benefit denial" pursuant to administrative review procedures required under ERISA and the corresponding regulations.[3] Swedish American requested that Midwest provide it with a copy of Midwest's summary plan description, as well as written notice detailing the bases for benefit denial and the means for pursuing an appeal. Interestingly, however, the letters also stated that they did "not constitute an appeal of, or a request to review, a denial of benefits under [ERISA]...." In none of its correspondence did Swedish American provide the information requested by Informed Patients and Midwest.

Midwest did not respond directly to Swedish American's letters. Instead, it waited for the additional documentation supporting the balance of the claims. When Swedish American failed to provide this information, Midwest wrote the participants, sending copies to Swedish American, stating that the remaining claims were being denied.[4] The letter also stated that a right to review the denial existed, and that the participant should deliver any request for a review in writing to the Midwest office. Rather than then request review of the denials, Swedish American filed this lawsuit.

### III. Discussion

#### A. Count I

Midwest has moved for summary judgment with respect to Count I of Swedish American's complaint. Count I is brought under the provisions of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.* (1990), and alleges that Swedish American is entitled to receive reimbursement benefits from Midwest, and that Midwest's denial of those claims was arbitrary and capricious. It is well established, however, that a party who seeks to recover benefits allegedly due under ERISA must generally exhaust administrative remedies before filing suit in federal court. *See Kross v. Western Elec. Co.,* 701 F.2d 1238, 1244–45 (7th Cir.1983). Whether to require exhaustion in a given case is left to the sound discretion of the trial court. *Talamine v. Unum Life Ins. Co. of America,* 803 F.Supp. 198, 201 (N.D.Ill.1992). This court adheres to the exhaustion requirement in order to effectuate Congress' intent in requiring plans to establish internal review procedures: "to help reduce the number of frivolous lawsuits; promote the consistent treatment of claims; provide a nonadversarial method of claims settlement; and decrease the cost and time of claims settlement." *Id.* at 201 (quoting *Powell v. AT & T Communications, Inc.,* 938 F.2d 823, 826 (7th Cir.1991)); *see also Kross,*

---

**1.** Midwest's benefit trust fund is subject to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.* (1990), and this court accordingly has jurisdiction under 29 U.S.C. § 1132(e).

**2.** In the case of one of the participants, Donald Anderson, the second letter requesting information came from Informed Patients rather than Midwest.

**3.** Although Swedish American's letters referred to "benefit denial," none of the benefits at issue had actually been denied at the time the letters were sent.

**4.** In the case of Donald Anderson, no denial had been issued at the time the lawsuit was filed.

701 F.2d at 1244–45 (quoting *Amato v. Bernard,* 618 F.2d 559, 567–68 (9th Cir.1980)).

■ In the present case, Swedish American has failed to initiate, much less exhaust, Midwest's internal review procedure. Swedish American asserts that its letters "contesting" the "denial" of benefits and citing the relevant statutes and regulations were sufficient to trigger the review process. However, the same letters specifically disclaimed that they constituted an appeal of or a request to review a denial of benefits. This disclaimer thus failed to trigger Midwest's review process, which required, pursuant to 29 C.F.R. § 2560.503–1(g)(1)(i), that a claimant "[r]equest a review." As a result, Swedish American's claim that it satisfactorily initiated the review process is unsupported by the facts.

■ More notably, the benefits at issue had not been denied at the time Swedish American's attorneys sent the letters. Although the letters cite the federal regulation which requires that plans establish review procedures and provide claimants with relevant documents, such procedures are only required when the benefits at issue have actually been denied. 29 C.F.R. § 2560.503–1(g)(1) ("Every plan shall establish and maintain a procedure by which a claimant ... has a reasonable opportunity to appeal a *denied claim*....") (emphasis added). As a result, until the benefits at issue had been denied, any attempt by Swedish American to "contest [Midwest's] benefit denial" was premature, and thus failed to satisfy the exhaustion requirement.[5]

■ Swedish American also argues that exhaustion of internal remedies should not be required in this case because exhaustion would be futile. While it is true that futility can serve as a basis for excusing exhaustion, *see Powell,* 938 F.2d at 826, Swedish American has failed to demonstrate that engaging in the review process offered under Midwest's plan would be a useless gesture. Swedish American first argues that Midwest's failure to respond to its request for a summary plan description demonstrates futility.[6] However, in the case from which Swedish American quotes, the benefits at issue had already been denied, and the claimant was thus entitled to pursue the administrative remedies offered by the plan. Here, Swedish American's claim that it was denied meaningful access to review procedures is undercut by the fact that it failed to renew its request for documentation after the claims were actually denied, when Swedish American first became entitled to a review. In addition, Swedish American acknowledges that it has since received a copy of both the full plan and the summary plan description. As a result, it should be prepared to go forward with an administrative review.

■ Swedish American sets forth two additional arguments which it claims support a finding of futility. First, Swedish American argues that there is a clear ideological impasse between Swedish American and Informed Patients and Larry Bushmaker, Midwest's Administrative Manager, regarding "reasonable" hospital charges and the practice of cost-shifting in Illinois hospitals. While this may be true, it does not support a finding of futility. Neither Bushmaker nor a representative of Informed Patients sits on the review panel; rather, the panel is comprised of one management trustee and one union trustee. There is no indication that the panel will agree with Bushmaker and Informed Patients on this issue. Indeed, there is no evidence that the panel has ever even considered the issue set forth by Swedish American. Far from supporting a finding a futility, the facts in this case demonstrate the benefits of the exhaustion doctrine. It is possible that the review panel will agree with Swedish American and reimburse the disputed claims. Such a result allows the trustees of the plan to effectively and consistently

---

5. Furthermore, to the extent that the purpose of the letters was merely to express Swedish American's intent to request a review of benefit denials in the future, they clearly could not, as Swedish American seems to assert, also satisfy the requirement that Swedish American actually request a review.

6. We note that, while Midwest's failure to respond to Swedish American's requests might support a claim under 29 U.S.C. § 1132(c), Swedish American has not made an effort to plead that cause of action.

administer the terms of the plan, while reducing the burden on the federal court system and minimizing the costs of resolving this dispute.

Swedish American also asserts that exhaustion should be excused because Informed Patients' document request was "so overly burdensome as to be impossible to comply with its terms." We note first that satisfaction of the document request was not, as Swedish American apparently suggests, a prerequisite to obtaining review to a denial of benefits. Rather, Informed Patients sought documentation of claims that had not yet been denied, in order to determine whether those claims should be paid or denied. Swedish American's failure to provide the documentation forced Informed Patients to deny the disputed claims, and in turn *opened* the door to the review process. More importantly, however, Swedish American is free to make this argument to the review panel in contesting the denial of benefits. Once again, the panel may agree with Swedish American on the amount of relevant documentation required to assess claim validity, and accordingly grant Swedish American the relief it seeks. A decision by this court at this time is therefore inappropriate.

Our grant of summary judgment to Midwest does not eliminate all recourse for Swedish American. On the contrary, Midwest has repeatedly affirmed that Swedish American remains entitled to initiate the review which is required by ERISA and offered under Midwest's plan. We hope that the parties are able to resolve their dispute through these procedures, as was Congress' intent in requiring that such procedures be available to plan participants and beneficiaries. In the event that Swedish American remains dissatisfied after the review offered by Midwest, it may return to federal court. *See Smith v. Blue Cross & Blue Shield,* 959 F.2d 655, 658 (7th Cir.1992) ("Judgment on this theory will not prevent plaintiffs from exhausting their plan remedy, assuming they are not barred by lapse of time, and then

suing upon the merits."). Its presence here at this time, however, is premature.

**B. Count II**

Midwest has also moved for summary judgment on Count II, which essentially asserts that Midwest is estopped from denying full reimbursement. In support of its motion for summary judgment, Midwest argues that state estoppel claims are preempted by ERISA, and that, in any event, Swedish American's allegations do not support an estoppel claim. Swedish American, however, has failed to respond to Midwest's arguments in their opposition papers, and therefore concedes these points. *See Valluzzi v. United States Postal Service,* 775 F.Supp. 1124, 1125 (N.D.Ill.1991); *Southern Nevada Shell Dealers Ass'n v. Shell Oil,* 725 F.Supp. 1104, 1109 (D.Nev.1989). Summary judgment is thus warranted as to this claim. Accordingly, Midwest's motion for summary judgment on Count II is granted.

**IV. Conclusion**

For the reasons set forth above, we grant defendant Midwest Operating Engineers Fringe Benefit Funds' motion for summary judgment.[7] It is so ordered.

---

7. We direct counsel for *both* parties to rule 3.3(a) of The Bluebook: A Uniform System of Citation (15th ed. 1991) ("When referring to specific material within … a source, include *both* the page on which the source begins *and the page on* which the specific material appears, separated by commas…..") (emphasis added). We expect briefs in any cases counsel may have before this court to comply with this elementary requisite.