**Donald R. POWELL,**
**Plaintiff–Appellant,**

v.

**A.T. & T. COMMUNICATIONS, INC.,**
**Defendant–Appellee.**

**No. 90–3207.**

United States Court of Appeals,
Seventh Circuit.

Argued May 29, 1991.

Decided Aug. 8, 1991.

Joanne Kinoy (argued), Kinoy, Taren, Geraghty & Potter, Chicago, Ill., for plaintiff-appellant.

Charles C. Jackson, Gary S. Kaplan (argued), Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for defendant-appellee.

Before BAUER, Chief Judge, and WOOD, JR., and KANNE, Circuit Judges.

HARLINGTON WOOD, JR., Circuit Judge.

Plaintiff Donald Powell sued his former employer, A.T. & T. Communications (AT & T), alleging that AT & T discharged him to avoid paying his medical insurance and disability benefits in violation of Section 510 of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1140. The district court granted AT & T's motion for summary judgment on the ground that Powell had failed to exhaust his administrative remedies with AT & T prior to filing suit. We affirm that decision.

## I.

Powell started working for AT & T in 1970. Throughout his eighteen years of employment, he was covered by a Sickness and Accident Disability Benefit Plan (Plan). In the event of an illness, the Plan provides for first full pay and then half pay for a total of one year. An employee who remains disabled after receiving fifty-two weeks of short-term disability benefits may apply for long-term disability benefits at half salary.

An AT & T Employees' Benefit Committee (Benefit Committee) administers the Plan, with Rosanne Maglio responsible for day-to-day administration. Upon written request by a plan participant, a decision of the Benefit Committee can be reviewed by the AT & T Employees' Benefit Claim Review Committee (Review Committee), which is made up of non-Benefit Committee employees. Under the Plan, both committees are named fiduciaries as that term is used in ERISA. 29 U.S.C. §§ 1102–1114.

AT & T provided a summary plan description—in other words, a plain language version of the Plan—to every employee. The summary establishes the application procedure for disability benefits. First, the participant must notify a supervisor of the absence, next be placed under a physician's care, and finally follow the physician's recommended treatment. The participant must also submit a doctor's certification of the disability on a company form. The form goes to the AT & T Medical Department, which medically verifies the disability described in the certificate. If the Benefit Committee denies the claim, the participant is informed of that decision and given an explanation. The participant is also informed about the right to take an administrative appeal within sixty days to the Review Committee. The decision of that Committee is final.

Powell's medical problems started in 1986. Because he was suffering from moderate depression, AT & T granted him a three-month disability leave. He returned to work as a supervisor in January 1987, but several months later the symptoms reappeared. He then took a second disability leave which ended in January 1988. For a second time, Powell went back to his old job, but continued to have mental difficulties. He also began carrying a loaded long-barrel revolver in his briefcase and even showed the gun to one of his clerical employees. When Powell's supervisors

found out, they placed him on paid administrative leave, determined through a consulting psychologist that he was not currently mentally disabled, and then fired him on March 14, 1988.

Three months later on June 10, 1988, Powell's counsel wrote to AT & T regarding "the legality of his termination after seventeen years of employment, the status of his pension, and the availability of any other forms of disability benefits." The attorney requested a copy of the pension and disability plans as well as notification on the status of Powell's pension. Counsel concluded that "[w]e are currently researching Mr. Powell's potential legal rights in this matter including but not limited to, claims under ERISA, Illinois Workman's Compensation Act, Illinois Human Rights Act, and the Social Security Act." AT & T responded, stating that "[t]he materials and information you have requested is (sic) currently being reviewed and assembled." Counsel subsequently received two pamphlets on employee benefits.

When Powell filed suit in October 1988, he claimed that he was fired so that AT & T could avoid paying a third round of disability benefits. In its motion for summary judgment, AT & T countered that Powell was fired because of the gun. The district court never reached these issues because in granting summary judgment, the court accepted AT & T's alternative argument that Powell had failed to exhaust his administrative remedies under the benefit plan. The court rejected Powell's argument that exhaustion of the claim and appeal procedures would have been futile and that he was denied meaningful access to the administrative process. This appeal ensued.

## II.

Powell's complaint alleged that he was discharged in violation of section 510 of ERISA, 29 U.S.C. § 1140. Section 510 prohibits an employer from discharging an employee "for the purpose of interfering with the attainment of any right to which [a plan] participant may become entitled" under an employee benefit plan. These substantive rights can be enforced through civil actions brought pursuant to section 502 of ERISA, 29 U.S.C. § 1132. Specifically, section 502(a)(3), 29 U.S.C. § 1132(a)(3), encompasses civil actions such as this one for violations of ERISA itself. Section 502 is silent as to whether exhaustion of administrative remedies is a prerequisite to bringing such a civil action.

 The rule in this court is clear: the decision to require exhaustion as a prerequisite to bringing suit is a matter within the discretion of the trial court and may be disturbed on appeal only when there has been a clear abuse of discretion. *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 466 (7th Cir.1986), *cert. denied*, 479 U.S. 1066, 107 S.Ct. 954, 93 L.Ed.2d 1002 (1987) (citing *Kross v. Western Elec. Co.*, 701 F.2d 1238, 1244–45 (7th Cir.1983)). The district court's decision is disturbed only if the reviewing court is confident that the decision is obviously in error. *See Kasper v. Board of Election Comm'rs*, 814 F.2d 332, 339 (7th Cir.1987). Abuse of discretion means a serious error of judgment, such as reliance on a forbidden factor or failure to consider an essential factor.* *Id.*

This court held in *Kross* that the strong federal policy encouraging private resolution of ERISA-related disputes mandates the application of the exhaustion doctrine to statutory claims for breach of a fiduciary duty under ERISA. 701 F.2d at 1244. Since we decided *Kross*, five other circuits have reached a similar conclusion. *Simmons v. Willcox*, 911 F.2d 1077, 1081 (5th Cir.1990); *Curry v. Contract Fabricators Inc. Profit Sharing Plan*, 891 F.2d 842, 846 (11th Cir.1990); *Leonelli v. Pennwalt Corp.*, 887 F.2d 1195, 1199 (2nd Cir.1989); *Makar v. Health Care Corp. of Mid–At-*

---

* Powell argues that the district court did not use the proper standard of review in evaluating his claim. He claims that in reaching its decision the district court resolved contested factual matters. In his appellate brief, he fails to identify in his section on this issue any findings by the district court that he contests. It is not this court's job to comb the record to determine factual issues he has in mind. *See Holzman v. Jaymar–Ruby, Inc.*, 916 F.2d 1298, 1303 (7th Cir.1990). The argument is waived.

*lantic,* 872 F.2d 80, 83 (4th Cir.1989); *Drinkwater v. Metropolitan Life Ins. Co.,* 846 F.2d 821, 825–26 (1st Cir.), *cert. denied,* 488 U.S. 909, 109 S.Ct. 261, 102 L.Ed.2d 249 (1988); *contra Zipf v. AT & T,* 799 F.2d 889, 893 (3rd Cir.1986); *Amaro v. Continental Can Co.,* 724 F.2d 747, 752 (9th Cir.1984). In making the case for exhaustion, we stated in *Kross* that implementing the exhaustion requirement enhances the ability of plan fiduciaries to expertly and efficiently manage their plans by preventing premature judicial intervention and because fully considered actions by plan fiduciaries may assist the courts when they must resolve controversies. *Kross,* 701 F.2d at 1244 (quoting *Amato v. Bernard,* 618 F.2d 559, 567–68 (9th Cir. 1980)).

■ In addition, Congress's apparent intent in mandating internal claims procedures found in ERISA, *see* section 503 of ERISA, 29 U.S.C. § 1133; *see also* 29 C.F.R. § 2560.503–1, was to minimize the number of frivolous lawsuits; promote consistent treatment of claims; provide a nonadversarial dispute resolution process; and decrease the cost and time of claims settlement. *Makar,* 872 F.2d at 83. In short, Congress intended plan fiduciaries, not federal courts, to have primary responsibility for claims processing. *Kross,* 701 F.2d at 1244. We take this opportunity to reaffirm this court's notion that a district court may properly require exhaustion of administrative proceedings prior to the filing of a claim involving an alleged violation of an ERISA statutory provision.

■ Next, Powell argues that exhaustion of administrative procedures would have been futile in this case. He contends that to be entitled to disability benefits he has to be an employee. Once he was fired, he argues, he could not file a request for benefits because the Benefit Committee had no authority to reinstate Powell or award benefits.

Powell has not shown that the filing of a claim under the Plan would have been an exercise in futility and a useless gesture. *Dale,* 797 F.2d at 467; *Kross,* 701 F.2d at 1246. The Plan at section 6(1) gives partici-pants the right to pursue a claim for disability benefits even after discharge, as long as the right to the benefit accrued prior to discharge. The language of section 6(1) of the Plan provides:

> [n]either the action of the Board of Directors in establishing this Plan, nor any action hereafter taken by the Board or the Committee shall be construed as giving to any officer, agent or employee a right to be retained in service of the company or right or claim to any benefit or allowance after discharge from the service of the company, unless the right to such benefit has accrued prior to such discharge.

In other words, the Committees had the authority to review a request from Powell for disability benefits after termination, assuming he was disabled prior to termination. This language from the Plan also gives the Committees the ability to provide Powell with a remedy, in this case an award of disability benefits.

We will never know what the Committees might have done with a disability claim from Powell, because he never initiated administrative review. They might have concluded that AT & T's consulting psychologist was wrong in finding him not disabled prior to termination. Powell might have brought in his treating physician to state that he was in fact disabled at the time of termination, and the gun-brandishing incident would have given him further ammunition for this argument. Because the Committees had the power to hear Powell's claim and provide a remedy, and because Powell had a reasonable argument to present to them, the district court did not err in declining to find an exception to the exhaustion requirement based on futility.

■ Last, Powell argues that he was denied meaningful access to administrative remedies because his counsel's letter to AT & T represented a reasonable attempt to initiate an administrative resolution of the charges. An attorney's letter can be sufficient to initiate administrative review if a reasonable procedure for filing claims has not been established. 29 C.F.R.

§ 2560.503–1(d); *see, e.g., Curry,* 891 F.2d at 845 n. 4. Ignoring Powell's failure to argue that AT & T's filing procedure in the Plan was inadequate, not just any letter would do. The content of the letter must be reasonably calculated to alert the employer to the nature of the claim and request administrative review. 29 C.F.R. § 2560.503–1(d). The letter from Powell's counsel was not an attempt to jump start administrative proceedings, but a threat to take AT & T to court if the matter was not settled. While the letter requested general information on the various benefit plans, it sought the status only of the pension plan, not the disability plan. AT & T responded with an acknowledgment letter and copies of the plans. At that point, any uncertainty about the potential for commencing an administrative review regarding disability benefits could have been clarified by a quick note from Powell's attorney to AT & T. Powell's rear-guard attempt to turn a request for information and threat to sue into a demand for administrative review must be rejected. Absent a more clear-cut request for administrative review, the denial of Powell's claim on the grounds of exhaustion was proper.

### III.

The district court did not abuse its discretion in requiring that Powell exhaust his administrative remedies at AT & T prior to bringing this ERISA claim. We cannot say that an attempt to exhaust those remedies on Powell's part would have been futile. Finally, the letter sent by Powell's counsel was insufficient to invoke administrative remedies. For these reasons, the decision of the district court granting summary judgment in favor of AT & T is

AFFIRMED.